J-A17028-20 & J-A17029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRE HARDEE | : | |
| | : | |
| Appellant | : | No. 3360 EDA 2018 |

Appeal from the Order Entered May 24, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000447-2008

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRE HARDEE | : | |
| | : | |
| Appellant | : | No. 3361 EDA 2018 |

Appeal from the Order Entered May 24, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002319-2008

BEFORE:  BOWES, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McCAFFERY, J.:          **FILED SEPTEMBER 29, 2020**

We address together these two, related appeals taken by Andre Hardee

(Appellant), *nunc pro tunc*, from the order[1] of the Philadelphia County Court

_____

[1] Appellant's notices of appeal purport to appeal from the March 3, 2011, judgment of sentence.  On January 3, 2019, this Court filed two rule to show cause orders requiring Appellant to explain why his appeals should not be quashed.  Appellant responded to both requests, explaining that he was not

- 1 -

of Common Pleas dismissing his petition for collateral relief filed pursuant to the Post Conviction Relief Act[2] (PCRA). Appellant seeks relief from his jury convictions, at two separate dockets, of rape and related offenses for his repeated sexual abuse of three minor relatives. On appeal, Appellant avers the PCRA court erred in dismissing his petition without first conducting a hearing on his claim that prior counsel was ineffective, and failing to grant relief based upon after-discovered evidence of the trial court's prejudice. We affirm.

The PCRA court summarized the factual history[3] as follows:

Appellant [born 9/13/77] is the cousin of the three victims in this case: Boy 1 [], Girl 1 [], and Girl 2 []. All three victims lived with Appellant and their mother and grandmother in a home located in the city and county of Philadelphia, PA. Appellant sexually assaulted all three victims on several different occasions [from 1995 to 2000.] Appellant also forced his 13-year-old cousin[, Boy 2,] to rape Girl 2. Boy 2 was convicted of indecent exposure and corrupting the morals of a minor

Boy 1 testified that Appellant sexually abused him on two separate occasions. The first incident occurred when Boy 1 was watching TV in the living room. Appellant sat down next to Boy 1

---

appealing his judgment of sentence, he was appealing the order denying his PCRA petition. **See** Appellant's Response to Rule to Show Cause, 1/8/19, at 1-2. We have changed the captions accordingly.

[2] 42 Pa.C.S. §§ 9541-9546.

[3] We note on September 27, 2019, the Appeals Unit in the Philadelphia County Court of Common Pleas notified this Court that the certified records for these cases are missing from the Office of Judicial Records File Room and reconstructed records were prepared from available documents from the Court Document Management System. **See** Notice, 9/27/19.

and began touching and caressing his penis and butt. Appellant then took his penis out of his pants, placed Boy 1 on his hands and knees, and then anally penetrated him. After Appellant ceased the sodomization of Boy 1, Appellant told him not to tell anyone.

The second incident occurred when Boy 1 heard Appellant playing video games downstairs in the basement of the house. Boy 1 went downstairs and sat on Appellant's lap and asked to play video games with Appellant. While Boy 1 was playing, Appellant began to touch Boy 1, putting his hands in his pants and touching his penis. Appellant then pulled out his own penis, exposing himself to Boy 1, and then took off Boy 1's pants. Appellant then picked up Boy 1 and positioned him, so he was sitting above his exposed penis, and then attempted to anally penetrate Boy 1. After a partial insertion, Boy 1 ran upstairs.

Girl 1 testified that Appellant sexually abused her multiple times while she lived with Appellant. The first incident occurred when, while Girl 1 was sleeping, Appellant entered her bedroom, put his hand over her mouth and yanked her pajama pants off. While pinning Girl 1 down onto the bed with the weight of his body, Appellant inserted his penis into her vagina. Girl 1 testified that Appellant pulled his penis out of her after some time and that "white stuff" came out of his penis and onto the floor.

The next incident occurred when Appellant approached Girl 1 while she was watching television in the living room. Appellant entered the room and showed Girl 1 his penis while she was sitting on the couch. Appellant then pushed Girl 1 down onto her back and ripped off her pants. Appellant put his weight on Girl 1, so she was unable to get away despite her whole body moving and struggling. Appellant shoved his penis into Girl 1 but got off her when her stepdad began to walk down the stairs.

Girl 2 testified that Appellant repeatedly assaulted her while between the ages of 6 and 7. The first incident occurred when Appellant entered Girl 2's bedroom while she was sleeping, covered her mouth with his hands and pulled her nightgown up. Appellant exposed himself and penetrated her vagina with his penis. Appellant ceased raping Girl 2 when Girl 1, who was sleeping in the bed next to Girl 2, woke up. After Appellant left the room Girl 2 immediately ran into her mother's room to tell her

what happened. Girl 2 testified that her mother did not believe her.

Another incident occurred when, while in the [k]itchen, Appellant picked up Girl 2 and placed her on top of the kitchen table. Appellant pulled down her pants and underwear and shoved his penis into her vagina. After several minutes Appellant ceased raping Girl 2 due to her grandmother walking down the stairs. Another incident occurred in the living room of the house. Although Girl 2 didn't remember specific details of the incident, she testified that Appellant threw her onto the couch and vaginally raped her.

An additional incident occurred when Girl 2's older cousin, Boy 2, was living in the home. Boy 2 testified that he entered the home and was intercepted by Appellant when he was walking up the stairs. Appellant was in Girl 2's room when he called out to Boy 2 saying "come here little nigger . . . come fuck this girl, come fuck the little cousin." Boy 2 testified that he observed Girl 2 crying on the bed and was told by Appellant to "do what I told you to do or I'll beat you up . . . . " At the direction of Appellant, Boy 2 pulled Girl 2's pants off and laid on her. Boy 2 began grinding his penis against her vagina while Appellant covered Girl 2's mouth with his hand to prevent her from screaming for help.

PCRA Ct. Op., 8/19/19, at 3-5 (record citations omitted)

Appellant was arrested and charged with numerous sexual offenses at two separate dockets; however, most of the charges were *nolle prossed* at trial. At Docket CP-51-CR-0000447-2008 (447), Appellant was charged with one count each of rape of a child less than 13 years of age and involuntary deviate sexual intercourse of a child less than 13 years of age,[4] as well as two

---

[4] 18 Pa.C.S. §§ 3121(6), 3123(a)(6), 1995, March 31, P.L. 985, No. 10 (Spec. Sess. No. 1), § 3, § 6 effective in 60 days.

counts of corruption of minors[5] for his offenses against Boy 1 and Girl 2. At Docket CP-51-CR-0002319-2008 (2319), Appellant was charged with one count each of criminal attempt—rape[6] and corruption of minors for his offenses against Girl 1.

The cases proceeded to a joint trial presided over by the Honorable Willis W. Berry, Jr. The PCRA proceedings were presided over by the Honorable Robert P. Coleman. On June 9, 2010, a jury convicted him of all charges for his sex crimes against Boy 1, Girl 1, and Girl 2.

On March 3, 2011, the trial court sentenced Appellant on both dockets. At Docket 447, the trial court sentenced Appellant to 10 to 20 years' incarceration for rape, to be followed by a consecutive sentence of 10 to 20 years' incarceration for IDSI. The trial court also sentenced Appellant to two and a half to five years' incarceration for each corruption of minors charge, but these sentences were to run concurrently with his IDSI sentence. At Docket 2319, the trial court sentenced Appellant to 10 to 20 years' incarceration for attempted rape and two and a half to five years' incarceration for corruption of minors. Both sentences at Docket 2319 were to run concurrently with his IDSI sentence at Docket 447. Appellant's aggregate

---

[5] 18 Pa.C.S. § 6301(a)(1).

[6] 18 Pa.C.S. § 901(a).

sentence was 20 to 40 years' incarceration. The trial court also determined Appellant met the criteria for classification as a sexually violent predator under the then applicable sexual offender registration act.[7] *See* N.T., Sentencing H'rg, 3/3/11, at 28-29.

This Court affirmed the judgment of sentence on direct appeal, and the Pennsylvania Supreme Court denied *allocatur* review on November 27, 2013. ***Commonwealth v. Hardee***, 1051 EDA 2011 (unpub. memo) (Pa. Super. 2013), *appeal denied,* 336 EAL 2013 (Pa. 2013). Leanne L. Litwin, Esquire (prior counsel), represented Appellant during both his trial and direct appeal.

On July 9, 2014, Appellant filed a timely, *pro se* PCRA petition followed by an amended *pro se* petition on December 1, 2014. The PCRA court appointed Peter A. Levin, Esquire (PCRA counsel), to represent Appellant, who then filed a counseled amended PCRA petition on June 19, 2017. On March 1, 2018, the PCRA court issued notice of its intent to dismiss the petition

---

[7] We note Appellant does not challenge his status as an SVP or his registration requirements under the now-applicable Sex Offender Registration and Notification Act (SORNA II), 42 Pa.C.S. §§ 9799.10 to 9799.71. *See* ***Commonwealth v. Butler***, 226 A.3d 972, 976 (Pa. 2020) (holding the registration, notification and counseling requirements of Pennsylvania's sexual offender notification and registration act "do not constitute criminal punishment and therefore the procedure for designating individuals as [sexually violent predators] under [42 Pa.C.S. §] 9799.24(e)(3) is . . . constitutionally permissible"); ***Commonwealth v. Lacombe***, ____ A.3d ____, 2020 WL 4150283 (Pa. 2020) (holding Subchapter I of SORNA II, which applies to sexual offenders whose crimes occurred between April 1996 and December 2012, "is nonpunitive and does not violate the constitutional prohibition against ex post facto laws").

pursuant to Pa.R.Crim.P. 907. Appellant did not respond. On May 24, 2018, the PCRA court formally dismissed the petition. No timely appeal was filed.

On October 21, 2018, PCRA counsel filed another PCRA petition requesting Appellant's PCRA appeal rights be reinstated *nunc pro tunc* due to an improperly delivered piece of mail that Appellant sent requesting an appeal be filed on his behalf. Appellant's Limited Petition Under Post-Conviction Relief Act, 10/21/18, at 2-3. On November 8, 2018, the PCRA court granted Appellant's requested relief. Appellant filed two, *pro se* notices of appeal, *nunc pro tunc*, on November 19, 2018.[8] The PCRA court ordered a Pa.R.A.P 1925(b) statement and Appellant timely complied.

Appellant presents three issues for our review:

I. Whether the court erred in denying the Appellant's PCRA petition without an evidentiary hearing on the issues raised in the amended PCRA petition regarding prior counsel's ineffectiveness[?]

II. Whether the court erred in not granting relief on the PCRA petition alleging counsel was ineffective[?]

III. Whether the court erred in granting relief of the PCRA petition alleging Appellant was prejudiced by after discovered evidence[?]

Appellant's Brief at 9.

---

[8] We note that Appellant complied with the requirements of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), and filed separate notices of appeal at each trial docket number.

Appellant's first two issues are related as they concern prior counsel's ineffectiveness. Appellant contends the PCRA court erred in dismissing his petition without a hearing because of prior counsel's ineffectiveness in failing to raise issues on appeal concerning Appellant's harsh and unreasonable sentence and the trial court's re-charging on the corruption of minors jury instruction. Appellant's Brief at 17. He also argues counsel was ineffective for failing to present character witnesses at trial. *Id.* Appellant believes prior counsel's ineffectiveness is evidenced by the fact counsel filed a reconsideration of sentence motion and objected to the improper jury instruction at trial. *Id.* at 21-22

Our review of an order denying a PCRA petition is well-settled: "we must determine whether the PCRA court's order 'is supported by the record and free of legal error.'" *Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (citation omitted). Moreover, we emphasize:

> "[A] petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact and the petitioner is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings." "A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing."

*Commonwealth v. Smith*, 121 A.3d 1049, 1052 (Pa. Super. 2015) (citations omitted). "A PCRA court's decision denying a claim without a hearing may

only be reversed upon a finding of an abuse of discretion." ***Commonwealth v. Keaton***, 45 A.3d 1050, 1094 (Pa. 2012).

Furthermore: "To plead and prove ineffective assistance of counsel, a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." ***Commonwealth v. Stewart***, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*) (citation omitted). A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any one of these prongs. ***Id.*** "Counsel is presumed to have rendered effective assistance." ***Commonwealth v. Montalvo***, 114 A.3d 401, 410 (Pa. 2015).

Appellant first challenges prior counsel's ineffectiveness for failing to raise on direct appeal the trial court's imposition of a "harsh and unreasonable sentence," when counsel had filed a post-sentence motion for reconsideration of sentence. Appellant's Brief at 18. We further note the record reflects prior counsel argued the sentence was "unconstitutionally disproportionate" at the subsequent hearing.[9] N.T., Motion H'rg, 4/6/11, at 5. Thus, Appellant challenges the discretionary aspects of sentencing.

"The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal."

---

[9] The post-sentence motion filed by prior counsel is not included in the reconstructed record. ***See*** n.3, ***supra***.

*Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014).

"An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence."[10] *Id.* One component of this test is whether the appellant's challenge to the discretionary aspects of a sentence presents a substantial question. *Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013). "A substantial question requires a demonstration that 'the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process.'" *Commonwealth v. Fisher*, 47 A.3d 155, 159 (Pa. Super. 2012) (citation omitted). Generally, "[a]n allegation that the sentencing court failed to consider certain mitigating factors generally does not . . . raise a substantial question." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) 171.

Here, Appellant argues that the trial court "had no reasonable reasons for its harsh sentence" and it disregarded several mitigating factors. Appellant's Brief at 18-19. Appellant avers such factors included: his young age of 33 years old, his prior record of drug offenses, but no history of sexual

---

[10] The four-part test includes: "(1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code." *Buterbaugh*, 91 A.3d at 1265-66 (citation omitted).

offenses, his growing up in a "broken home," his upcoming wedding, and how he had been around his girlfriend's children with no problems. *Id.* However, Appellant does not challenge a specific provision of the sentencing scheme nor cite any particular fundamental norm underlying the sentencing process that he believes was violated. Appellant does not explain what the applicable guideline ranges were for his offenses, or where his sentence fell within those guidelines; nor does he state what he believes would constitute an appropriate sentence. He simply asserts the court had "no reasonable reasons" and disregarded many mitigating circumstances when fashioning its sentence. Thus, Appellant fails to demonstrate how his claim would have presented a substantial question had it been raised on direct appeal. *See Fisher*, 47 A.3d at 159; *Moury*, 992 A.2d at 171. Accordingly, Appellant cannot establish this issue has arguable merit. *See Stewart*, 84 A.3d at 706.

Moreover, our review of the record also reveals that, at Appellant's sentencing hearing, the Assistant District Attorney requested that the trial court impose an aggravated sentence of 48 to96 years' incarceration. N.T., 3/3/11, at 41. The trial court specifically acknowledged after it imposed his sentence that it "knew what the guidelines were" and "read all of the reports."[11] *Id.* at 49. It further elucidated that one of its reasons for imposing

_____

[11] It is well-established that:

a sentence of 10 to 20 years' incarceration for attempted rape was due to the fact Girl 1 was five years old at the time of the first incident. *See id.* at 46. At the post-sentencing hearing, the trial court reiterated it imposed his sentence because, despite Appellant being convicted of attempted rape, Girl 1 testified "she was actually raped [and] that's what he took into account." N.T., 4/6/11, at 14. Further, the trial court imposed two sentences at Docket 447 (IDSI and rape) to run consecutively, while the attempted rape at Docket 2319 ran concurrently for an aggregate sentence of 20 to 40 years' incarceration.

Furthermore, we note the PCRA court explained:

[I]t is apparent from the facts that Appellant is both a clear and present danger to the public. Over a period of multiple years Appellant raped, abused and sexually terrorized multiple small children, one of which was as young as [5] years old. Appellant raped them while they were watching TV, while they were playing video games, and even while they were in the kitchen trying to get a snack. Appellant forced an older cousin, under threat of violence, to rape a younger cousin. Appellant is a dangerous entity who has shown brazen disregard for the safety and wellbeing of children.

_____

Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.

*Moury*, 992 A.2d at 171 (citation omitted).

- 12 -

*    *    *

[Prior] Counsel was not ineffective in representation because Appellant was not actually given a harsh and unreasonable sentence. Firstly, with a prior record score of 5 and an offense gravity score of 14, the aggregate sentence of 20-40 years[' incarceration] was in the statutorily prescribed limits. . . .

With the proportionality of Appellant's sentence preserved, it is apparent that there was more than enough "reasonable basis" for appellate counsel not to raise the issue. Therefore, Appellant's argument that  Appellant suffered actual prejudice as a result of not raising the issue is unpersuasive.

PCRA Ct. Op. at 7-8.

We review a sentencing court's determination for an abuse of discretion. *Moury*, 992 A.2d at 169. Since this aggregate sentence was well within the trial court's discretion and the trial court had the benefit of multiple reports about Appellant, Appellant has failed to demonstrate his sentence was inappropriate. *See id.* at 171. Therefore, Appellant's first argument fails.

Appellant next claims prior counsel was ineffective for failing to raise on direct appeal the issue of the trial court's re-charging on the corruption of minors jury instruction. Appellant's Brief at 22. The trial court initially instructed the jury that in order for Appellant to be found guilty of corrupting the morals of a minor, he had to corrupt or tend to corrupt the morals of the child by **sexual conduct**. N.T. Jury Trial, 6/8/10, at 120-21 (emphasis added). After a jury question requesting the trial court to restate the corruption of minors jury charge, the trial court stated:

Let me go through it again. The elements are that the defendant was 18 years of age or older at the time of the incident, that the

- 13 -

minor was under 18 years of age, and that the defendant corrupted or tended to corrupt the morals of the minor **by the alleged conduct involved. And that's the conduct of rape, attempted rape, involuntary deviate sexual intercourse**.

*Id.* at 131-32 (emphasis added). Once the jury returned to deliberate, prior counsel objected to the court's language in the recharge. *See id.* at 132-34. Appellant contends he suffered prejudice as a result of counsel's failure to raise this issue on direct appeal because the court's instruction confused the jury and "[prior] counsel obviously thought this issue had merit which is why counsel raised this issue at trial." Appellant's Brief at 22.

When considering a challenge to the trial court's jury charge, we must bear in mind:

> Our trial courts are invested with broad discretion in crafting jury instructions, and such instructions will be upheld so long as they clearly and accurately present the law to the jury for its consideration. Where a defendant appeals a jury instruction, we consider the challenged instruction in its entirety, rather than isolated fragments.

*Commonwealth v. Simpson*, 66 A.3d 253, 274 (Pa. 2013) (citation omitted).

Here, the PCRA court concluded:

> [T]he trial [court] differed from their reiteration of the charge [versus] the initial charge to the jury regarding the corruption of the morals of a minor. The difference was simply in verbiage, and a technicality at best. The reiteration of the charge referred to specific crimes in reference to what could corrupt the morals of a minor—being the adjacent charges of deviate sexual intercourse, rape, attempted rape. Technically, any illicit conduct could be found to corrupt the morals of a minor, not just the sexual conduct in this case.

However, this imperfect reiteration was addressed by the [c]ourt; and even if it wasn't, it certainly doesn't rise to the level of abuse of discretion that would render it a reversible error[. T]he trial court had the discretion to modify their verbiage and tailor it to the case at hand, as long as the law was accurately communicated to the [j]ury. Therefore, there is no merit to a claim of ineffective assistance of counsel on these grounds.

PCRA Ct. Op. at 9. We agree. The trial court clearly and accurately charged the jury regarding the specific conduct in the case before it that warranted a conviction for corruption of minors. N.T., 6/8/10, at 131-32. "Instructions will be upheld if they adequately and accurately reflect the law and are sufficient to guide the jury properly in its deliberations." *Commonwealth v. Rainey*, 928 A.2d 215, 243 (Pa. 2007). Appellant has failed to demonstrate the supplemental instruction provided by the trial court was erroneous, confusing, or prejudiced him in anyway. Therefore, his challenge warrants no relief because counsel was not ineffective for failing to raise this issue on direct appeal.

Appellant next argues that prior counsel was ineffective for failing to present character witnesses at trial. Appellant avers he had witnesses, including his girlfriend who testified at sentencing, and other people who would have testified to his good character. Appellant's Brief at 22-23. Appellant contends there was "no reasonable basis not to present the testimony of witnesses available to the defense who would have testified to Appellant's good character and reputation." *Id.* at 24. Relying on *Commonwealth v. Weiss*, 606 A.2d 439 (Pa. 1992), Appellant believes

character evidence is critical to the jury's determination of credibility and if it had been presented here, he would have been entitled to an instruction that character evidence alone "could cause a jury to have a reasonable doubt." Appellant's Brief 23-24.

Pursuant to the Pennsylvania Rules of Evidence, a criminal defendant is permitted to present evidence of his character traits, so long as those character traits are pertinent to the crimes charged. Pa.R.E. 404(a)(2)(A).

> The rationale for the admission of character testimony is that an accused may not be able to produce any other evidence to exculpate himself from the charge he faces except his own oath and evidence of good character.
>
> It is clearly established that evidence of good character is to be regarded as evidence of substantive fact just as any other evidence tending to establish innocence and may be considered by the jury in connection with all of the evidence presented in the case on the general issue of guilt or innocence. "Evidence of good character is substantive and positive evidence, not a mere make weight to be considered in a doubtful case, and, . . . is an independent factor which may of itself engender reasonable doubt or produce a conclusion of innocence." **Evidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation for the particular trait or traits of character involved in the commission of the crime charged. . . . Such evidence must relate to a period at or about the time the offense was committed, and must be "established by testimony of witnesses as to the community opinion of the individual in question, not through specific acts or mere rumor."**
>
> In a rape case, evidence of the character of the defendant would be limited to presentation of testimony concerning his general reputation in the community with regard to such traits as nonviolence or peaceableness, quietness, good moral character, chastity, and disposition to observe good order.

This court has made clear that "[i]n a case . . . where intent and credibility are decisive factors leading to either acquittal or conviction, the accused's reputation is of paramount importance. Indeed, evidence of good character may, in spite of all evidence to the contrary, raise a reasonable doubt in the minds of the jury."

*Commonwealth v. Luther*, 463 A.2d 1073, 1077-78 (Pa. Super. 1983)

(citations omitted and emphasis added).

Our standard or review is well settled:

To be entitled to relief on a claim of ineffectiveness for failure to call a witness, an appellant must demonstrate: the witness existed, was available, and willing to cooperate; counsel knew, or should have known of the witness; and the absence of the witness's testimony prejudiced [the] appellant. A PCRA petitioner cannot succeed on such a clam if the proposed witness' testimony would not have materially aided him. In such a case, the underlying-merit and prejudice prongs of the [ineffective assistance of counsel] test logically overlap. To show prejudice, the [PCRA] petitioner must demonstrate that, but for counsel's allegedly unprofessional conduct, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Johnson*, 139 A.3d 1257, 1284 (Pa. 2016) (citations omitted). An appellant is not required to attach sworn affidavits to his PCRA petition in support of his request for an evidentiary hearing of the witnesses who would testify to his good reputation. *See Commonwealth v. Pander*, 100 A.3d 626, 641 (Pa. Super. 2014). Either the witness, his attorney, the defendant's attorney, or the petitioner himself can sign a certification summarizing, to the best of their knowledge, an accurate statement of what a potential witness would testify to. *Id.* at 641.

However, even when an appellant attaches affidavits from alleged character witnesses, including a summary of what their testimony would be, if he does not plead that prior counsel knew or should have known of the existence of these potential character witnesses his claim fails to establish that prior counsel was ineffective for failing to call witnesses. *Commonwealth v. Medina*, 209 A.3d 992, 998 (Pa. Super. 2019).

Here, Appellant has not attached any affidavits or certifications of potential witnesses to any of his PCRA petitions. *See Pander*, 100 A.3d at 641. Appellant merely states in his brief that "he had witnesses, including his girlfriend . . . and other people who would testify as to his good character." Appellant's Brief at 22-23. Further, Appellant does not plead that prior counsel knew or should have known of the existence of these potential character witnesses. Thus, his claim is meritless as it fails to establish that defense counsel was ineffective for failing to call witnesses. *See Medina*, 209 A.3d at 998.

> Additionally, as the PCRA court explained:
>
> The assertion that, but for Appellant's girlfriend's testimony as to his character, the outcome of the trial would have been different is absurd. At trial there was extensive and elaborate testimony, corroborated by a convicted co-conspirator, as to Appellant's conduct. The admission of limited character testimony in the face of such evidence would not have materially impacted the outcome of the trial in anyway. Additionally, there was nothing in the record to indicate that the decision by defense counsel to not put forward character testimony was anything short of a strategic decision. Appellant's claims are meritless.

PCRA Ct. Op. at 11.

Upon our review we find no reason to disturb the ruling of the PCRA court. Thus, Appellant's argument fails because it lacks merit.

Lastly, Appellant claims he was prejudiced by after-discovered evidence that the presiding trial judge, Honorable Willis W. Berry, Jr., was under criminal investigation at the time of Appellant's trial. Appellant believes this evidence "created undue prejudice against [him], corrupting the truth-seeking process of the judicial system." Appellant's Brief at 25.

Section 9543(a)(2)(vi) of the PCRA states:

**§ 9543. Eligibility for relief.**

**(a) General rule.--**To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:

* * *

(2) That the conviction or sentence resulted from one or more of the following:

* * *

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

42 Pa.C.S. § 9543(a)(2)(vi).

To address this claim, we first note the test applied to after-discovered evidence. When discussing the test in the context of a PCRA appeal, our Supreme Court recently summarized:

[W]e have viewed this analysis in criminal cases as comprising four distinct requirements, each of which, if unproven by the

petitioner, is fatal to the request for a new trial. As stated, the four-part test requires the petitioner to demonstrate the new evidence: (1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. The test applies with full force to claims arising under Section 9543(a)(2)(vi) of the PCRA. In addition, we have held the proposed new evidence must be producible and admissible.

*Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018) (citations omitted).

In the instant matter, the PCRA court explained there is "no nexus or connection between the trial judge's investigation and the case at hand. Additionally, there is no further evidence that a bias or prejudice deprived Appellant of a [fair] trial." PCRA Ct. Op. at 10. We agree. Appellant provides no evidence explaining how this information could not have been obtained prior to the conclusion of trial or how it would have resulted in a different verdict if a new trial were granted. *See* 42 Pa.C.S. § 9543(a)(2)(vi); *Small*, 189 A.3d at 972. Therefore, the PCRA court correctly dismissed this petition without a hearing. *See Keaton*, 45 A.3d at 1094.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/29/20

- 20 -